**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| ASSEMBLAGE ENTERTAINMENT PVT. LTD.,<br>    *Plaintiff*,<br><br>v.<br><br>41 ENTERTAINMENT, LLC and SMASH ANIMATION, LLC,<br>    *Defendants*. | 3:24-CV-01841 (SVN)<br><br><br><br><br><br>September 29, 2025 |

**<u>RULING AND ORDER ON DEFENDANTS' PARTIAL MOTION TO DISMISS</u>**

Sarala V. Nagala, United States District Judge.

In this business dispute, Plaintiff Assemblage Entertainment Pvt. Ltd., a graphics design studio, alleges that Defendants 41 Entertainment, LLC ("41E") and SMASH Animation, LLC ("SMASH"), failed to honor the terms of a contract between the parties by not fully compensating Plaintiff for its work on developing and creating episodes for Defendants' cartoon series. Plaintiff's complaint alleges seven counts, two of which are relevant for this partial motion to dismiss: Count VI, a promissory estoppel claim; and Count VII, a quantum meruit/unjust enrichment claim. Plaintiff also asserts a prayer for declaratory judgment relief in connection with Count VII. Defendants have moved to dismiss Counts VI and VII under Federal Rule of Civil Procedure 12(b)(6), as well as to dismiss or, in the alternative, to strike Plaintiff's request for declaratory judgment under Federal Rule of Civil Procedure 12(f). For the reasons explained below, the Court GRANTS Defendants' motion to dismiss, and will afford Plaintiff leave to amend its complaint.

I.   **FACTUAL BACKGROUND**

Plaintiff's complaint, ECF No. 1, alleges the following facts, which are taken as true for the purposes of a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff provides "world-class, award-winning creative engineering and computer-generated imagery ["CGI"] services and products to the world's leading digital entertainment studios." Compl., ECF No. 1 ¶ 8. Defendant 41E is "an animation company engaged in the creation, production, distribution, marketing and licensing of animated childrens' [sic] television programs, series and films," founded by Allen Bohbot. *Id.* ¶ 9. Bohbot also formed Defendant SMASH, the production and distribution company for S.M.A.S.H., a children's animated cartoon series centered on a German summer camp. *Id.* ¶ 10.

On or about June 4, 2021, Plaintiff and SMASH entered into a production agreement (the "PA") for the production of twenty-two episodes comprising Season 1 of S.M.A.S.H at a cost of $1,650,000, paid out in accordance with specified milestones. *Id.* ¶ 12; PA, Ex. A, ECF No. 1-2 at 2–17. Pursuant to the PA, Plaintiff was responsible for delivering a total of 190 computer-generated assets for Season 1. ECF No. 1 ¶ 13; ECF No. 1-2 ¶ 2.5. While these assets were developed for Season 1, they were "foundational," allowing them to "be reused, repurposed, and adapted for future episodes and subsequent seasons," reducing overall production costs and development periods over time. ECF No. 1 ¶ 18.

Pursuant to Article III of the PA, SMASH could also exercise an option to commission twenty-six further episodes for season two of S.M.A.S.H., "on the same terms and conditions as those for Season 1, for a production price of $1,570,416 and an aggregate computer-generated asset count of 330 assets for Seasons 1 and 2. *Id.* ¶¶ 17, 43; ECF No. 1-2 ¶ 3.1. The PA does not specify any method(s) by which this option must be exercised, but provided that Season 2 would

2

be delivered by November of 2022 if SMASH exercised the option to proceed with Season 2 no later than November of 2021.  ECF No. 1-2 ¶ 3.1(iii).

Assemblage commenced work on Season 1 production, in accordance with "a customary, industry-standard sequence of structured stages, each involving multiple review points requiring the Defendants' approval before advancing to the next phase[,]" as contemplated under the PA.  ECF No. 1 ¶ 20; ECF No. 1-2 ¶ 2.2.  While not a party to the PA, Defendant 41E, the alleged alter ego of SMASH, "remained actively involved and exercised substantial control over each production phase, underscoring its role as the true operational leader[.]"  ECF No. 1 ¶¶ 4, 32.  With production underway, Plaintiff received requests from Defendants for additional Season 1 assets totaling a production of 373 assets for Season 1 alone—nearly double what was originally contemplated under the PA.  *Id.* ¶ 33.  Plaintiff agreed to these requests and "proceeded to produce" the additional assets.  *Id.*  Defendants thereafter refused to compensate Plaintiff for producing these additional assets, claiming that they were not formally authorized.  *Id.* ¶ 37.

On December 15, 2021, Defendants, through Bohbot and 41E's Brand Assurance and Production Manager Francisco Ureña, instructed Assemblage to commence work on Season 2, and provided Assemblage with the necessary materials and schedules for review.  *Id.* ¶ 39–40; Ureña E-Mail, Ex. B, ECF No. 1-3 at 2.  Specifically, Ureña stated 41E would "be ready to start reviewing and approve S2 materials . . . 10 January 2022," and hoped "work can be done during [41E's] traditional break."  ECF No. 1-3 at 2.  On December 22, Bohbot also contacted Plaintiff regarding Season 2 production, referencing issues with the quality of files received from Plaintiff and inquiring if Plaintiff "want[ed] to accept this email confirmation from [Bohbot] and start modeling all designs for S2 or wait until January when new [sic] can formalize and deliver a number of board packages[.]"  Bohbot E-Mail, Ex. C, ECF No. 1-4 at 2.  Plaintiff replied on December 30,

3

to confirm it could improve the "process and results of the workflow," would "begin the modeling of the S2 assets" and could "pick up pace in January once [41E is] back from the break to formalize this." *Id.* at 3.

Plaintiff "immediately committed additional resources to commence work on Season 2," while simultaneously continuing production on Season 1. ECF No. 1 ¶ 42. Plaintiff alleges the parties understood that "details governing the production of Season 2, including the production schedule and payment milestones, would be set forth in a further amendment of the [PA]." *Id.* ¶ 44. Throughout early 2022, Plaintiff "received and implemented instructions from the Defendants" about Season 2 productions and, by the spring, had "performed extensive work on Season 2"—which Defendants were aware of—in order to meet the first Season 2 milestone in July 2022. *Id.* ¶¶ 45–47. Despite Defendants' repeated assurances, Plaintiff had "still not received a formal payment schedule" for Season 2 work. *Id.* ¶ 46. During this period, Bohbot "repeatedly promised to execute an Amendment to finalize the production schedule for Season 2." *Id.* ¶ 55.

In April 2022, Plaintiff made its first payment request for work on Season 2, which Bohbot responded to first by noting "Defendants' financial challenges," and later, on April 19, by directing Plaintiff to "temporarily halt further work on Season 2 until Season 1 was finalized in June." *Id.* ¶¶ 56–57. Over the next several months, Plaintiff made requests for further payments related to both Seasons 1 and 2, which Defendants had not yet made. *Id.* ¶¶ 58, 60. On October 20, 2022, Bohbot claimed that Defendants "had neither anticipated nor approved the additional assets produced for Season 1," nor "formally commissioned" Season 2 production "due to the absence of a finalized payment schedule," and "flatly rejected the Defendants' responsibility to pay [Plaintiff]." *Id.* ¶ 69–70. To date, Plaintiff has produced "a total of 373 CG assets for Season 1 and 190 CG assets for Season 2," well above the "combined cap of 330 assets specified in the

[PA]." *Id.* ¶ 74. Defendants have paid Plaintiff $1,450,000 for Season 1 production—$200,000 short of the price agreed upon in the PA—and nothing in connection with work related to Season 2 production. *Id.* ¶ 76.

On November 22, 2024, Plaintiff filed its complaint, ECF No. 1, which Defendants partially move to dismiss. ECF Nos. 23, 29. Specifically, Defendants move to dismiss Plaintiff's claims for promissory estoppel and quantum meruit/unjust enrichment, contending that each expressly incorporates allegations concerning an enforceable contract, despite that these claims are viable only in the absence of a contract.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted. When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.* In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted).

The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008), and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## III. DISCUSSION

Because Plaintiff's counts for promissory estoppel and quantum meruit/unjust enrichment both impermissibly re-plead allegations regarding the existence of an express and enforceable contract, the Court grants Defendants' partial motion to dismiss.[1]

"'Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law.'" *Gasperini v. Ctr. For Humanities, Inc.*, 518 U.S. 415, 427 (1996). Thus, the Court looks to federal law for procedural requirements such as pleading standards, and applies state law regarding the substance of Plaintiff's causes of action. *See Top Ridge Invs., LLC v. Anichini, Inc.*, No. 5:16-cv-76, 2017 WL 3016787, at *9 (D. Vt. July 14, 2017) (because Federal Rule of Civil Procedure 8(d) "only regulates the manner in which claims may be brought before the court and provides no substantive rule of decision," it is properly considered "procedural" in nature).

---

[1] Defendants have also moved to dismiss Plaintiff's prayer for declaratory relief in connection with its quantum meruit/unjust enrichment count. *See* Defs.' Mot., ECF No. 23 at 12. Plaintiff does not oppose this dismissal. *See* Pl.'s Opp'n, ECF No. 27 at 15 (stating that "Assemblage acknowledges that no such claim for declaratory relief is sought in the complaint," and making no argument for its preservation). As such, the Court grants Defendants' motion to dismiss in this respect, and strikes Plaintiff's prayer for declaratory judgment pursuant to Rule 12(f), which allows for the striking of any "redundant, immaterial, impertinent, or scandalous matter."

Under Federal Rule of Civil Procedure 8, "[a] pleading that states a claim for relief must contain . . . a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a)(3). Further, a "party may set out 2 or more statements of a claim or defense alternatively or hypothetically." *Id.* 8(d)(2). A party may do so "regardless of consistency" between the claims. *Id.* 8(d)(3). Further, alternative claims may be set out "either in a single count . . . or in separate ones." *Id.* 8(d)(2).

A. Promissory Estoppel (Count VI)

Because Plaintiff's promissory estoppel claim is improperly premised in part on the existence of an express and enforceable contract, Defendants' motion to dismiss is granted as to Count VI and its corresponding prayer for relief language.

"A plaintiff claiming promissory estoppel under Connecticut state law must prove (1) that the defendant did or said something intended to induce another party to believe that certain facts existed and to act on that belief, (2) that the plaintiff changed its position based on those facts, and (3) that doing so incurred some injury." *Aesthetic and Reconstructive Breast Ctr., LLC v. United HealthCare Grp., Inc.*, 367 F. Supp. 3d 1, 11 (D. Conn. 2019) (citing *McKinstry v. Sheriden Woods Health Care Ctr., Inc.*, 994 F. Supp. 2d 259, 266 (D. Conn. 2014)). Generally, "Connecticut courts allow a claim of promissory estoppel to proceed only after it has been established that no express contract existed." *Bell v. Univ. of Hartford*, 577 F. Supp. 3d 6, 36 (D. Conn. 2021) (citing *Datto Inc. v. Braband*, 856 F. Supp. 2d 354, 374 (D. Conn. 2012)). When both parties are in agreement as to the existence of an express contract between them, Plaintiff may not pursue a promissory estoppel claim. *See Wood v. Sempra Energy Trading Corp.*, No. 03-CV-986 (JCH), 2005 WL 465423, at *11 (D. Conn. Feb. 22, 2005); *Lamda Sols. Corp., v. HSBC Bank USA, N.A.*, 574 F. Supp. 3d 205, 214 (S.D.N.Y. 2021) (noting that a plaintiff who alleges existence of a valid contract

7

"may nonetheless plead the alternative theories of promissory estoppel and breach of contract when the defendant does not concede the enforceability of such contract").

Because the existence of an express contract is fatal to a promissory estoppel claim, when statements demonstrating "there was an enforceable contract between the parties" are "incorporated into [a] promissory estoppel claim," "[t]his alone renders [the] claim invalid." *Miller Auto. Corp. v. Jaguar Land Rover North America, L.L.C.*, No. 3:09-CV-1291 (EBB), 2010 WL 3260028, at *8 (D. Conn. Aug. 12, 2010) (noting that Connecticut state courts have held the same); *see also Holcombe v. Ingredients Sols., Inc.*, No. 3:17-cv-1090 (SRU), 2019 WL 1383432, at *7 (D. Conn. Mar. 27, 2019) ("[T]o the extent [plaintiff] is seeking recovery under a theory of promissory estoppel for commitments she claims were captured in an enforceable contract, her promissory estoppel claim must fail.")

Here, because Defendants have not conceded the existence of a valid and enforceable contract, a promissory estoppel claim would generally be permissible as an inconsistent argument made in the alternative at this stage. *See* Fed. R. Civ. P. 8(d)(2)–(3). Defendants acknowledge as much in their reply brief. *See* Defs.' Reply in Support of Opp'n., ECF No. 29 at 2. While Defendants' arguments rely on Plaintiff's "claim that an express contract exists," Defendants carefully refer only to "the existence of the *alleged* Production Agreement" in their briefing. *See* ECF No. 23 at 7, 11 (emphasis added). As such, Defendants cannot be said to have conceded the existence of an express contract—only that Plaintiff's arguments rely on the existence of one. Because the parties do not agree on this point, at this early stage of the proceeding, Plaintiff would ordinarily be able to proceed on the inconsistent theories of breach of contract and promissory estoppel. *See Terex South Dakota. Inc. v. Carraro Drive Tech, S.p.A.*, No. 3:17-CV-154 (DJS), 2019 WL 10984251, at *5 (D. Conn. Sept. 5, 2019).

Nevertheless, Rule 8 still requires that inconsistent or conflicting theories be pleaded "alternatively." Fed. R. Civ. P. 8(d)(2). Plaintiff has not done so here. Plaintiff's promissory estoppel count "repeats and realleges the allegations in Paragraphs 1 through 124" of the complaint in support. ECF No. 1 ¶ 125. Plaintiff's promissory estoppel count therefore incorporates allegations that "Defendants exercised [the Season 2] option . . . thereby creating an *enforceable contractual obligation*," *id.* ¶ 96 (emphasis added). Plaintiff's promissory estoppel claim also incorporates the *entirety* of its breach of contract claim, including that the parties "entered into the [PA], a valid and enforceable agreement . . . for Season 1 and Season 2." *Id.* ¶ 92. Thus, Plaintiff's promissory estoppel claim incorporates paragraphs describing an enforceable contract, which renders the promissory estoppel claim invalid under Connecticut law. *Miller Auto. Corp.*, 2010 WL 3260028, at *8 (citing *Reynolds, Pearson & Co., LLC v. Miglietta*, 2001 WL 418574, at *3 (Conn. Super. Ct. Mar. 27, 2001)).

Plaintiff counters that it seeks "relief for separate categories of damages arising from the work it performed," some pursuant to the PA, and other pursuant to alleged verbal and written promises. ECF No. 27 at 7. So framed, Plaintiff's promissory estoppel claim would be a permissible "alternative, equitable theor[y] of relief[.]" *Id.* at 8. But Plaintiff makes no attempt to draw these distinctions in the promissory estoppel count of its complaint.[2] Indeed, the count merely asserts that Defendants "made clear and definite promises that induced Assemblage to rely on those promises," and then incorporates arguments and references premised on the existence of an express and enforceable contract. ECF No. 1 ¶ 126. Without any further specification as to which promises Plaintiff refers to—and despite drawing all reasonable inferences in Plaintiff's

---

[2] Further, Plaintiff is clearly aware how to articulate a claim in the alternative, and in fact attempts to do so in its very next count for unjust enrichment/quantum meruit. *See* ECF No. 1 ¶ 130 ("[i]n the alternative, if the court finds that no enforceable contract existed . . ."). Plaintiff has not included any such language in its promissory estoppel claim.

9

favor—it is clear Plaintiff's promissory estoppel count necessarily includes "promises" resulting from the "exercise of the Season 2 option," and therefore an enforceable contractual obligation,[3] *id.* ¶¶ 96, 126, and the terms of the PA, which Plaintiff alleges was a valid and enforceable contract, *id.* ¶ 92.

Plaintiff also attempts to distinguish a number of cases that Defendants cite in support, stating that these cases "recognize a plaintiff's right to pursue equitable claims like promissory estoppel or unjust enrichment as alternatives to a breach of contract claim." ECF No. 27 at 9. Plaintiff misses the point, however. Defendants do not dispute that Plaintiff may plead contradicting theories in the alternative; rather, they argue, and this Court agrees, that Plaintiff has failed to plead its promissory estoppel claim alternatively. Thus, Defendants' motion to dismiss is granted as to Plaintiff's promissory estoppel claim and corresponding language in the complaint's prayer for relief section.[4] Nonetheless, because the parties do not agree on the existence of a valid and enforceable contract at this stage, Plaintiff may plead inconsistent theories of relief and is granted leave to re-plead its promissory estoppel claim.

---

[3] One Connecticut district court, in drawing all reasonable inferences in favor of a plaintiff on a motion to dismiss, treated contradictory references to a signed offer letter in a promissory estoppel count as an alternative theory, attempting to preserve written promises in the event that the offer letter at issue was not an enforceable contract. *See Parimal v. Manitex Int'l, Inc.*, No. 3:19-CV-01910, 2021 WL 1146918, at *7–8 (D. Conn. Mar. 25, 2021) (MPS) (allowing plaintiff's promissory estoppel count to proceed despite the count stating "'[i]n addition to the written employment agreement offered to [plaintiff], [defendant] made numerous clear and definite promises regarding additional terms and conditions of [plaintiff's] employment which were calculated to induce [plaintiff] to act upon the basis of those representations'"). However, Plaintiff cannot avail itself of *Parimal*'s logic here when it has not merely made "reference" to a written contract but has re-incorporated an *entire count* premised solely on the existence of a valid and enforceable contract into its promissory estoppel count. *Id.* at 8. Further, in *Parimal*, the court interpreted the promissory estoppel count to include written promises that were part of the written employment agreement, in the event that those promises were too indefinite to form a contract or if the contract failed for lack of consideration. *Id.* Plaintiff's complaint here makes no similar connection to written promises that may fail to create an enforceable contract for other reasons. Finally, it bears repeating again that, despite demonstrating an awareness of how to do so, Plaintiff has provided no indication that it pleaded its promissory estoppel claim in the alternative.

[4] Because Plaintiff's promissory estoppel claim improperly incorporates allegations of an express and enforceable contract and Plaintiff will be granted leave to amend, the Court does not address whether Plaintiff has pleaded this count with sufficient specificity under Rule 8. *See* ECF No. 29 at 2–4.

B.  Quantum Meruit/Unjust Enrichment Claim (Count VII)

Likewise, because Plaintiff's quantum meruit/unjust enrichment count also includes allegations based on an express contract, Defendants' motion to dismiss is granted as to Count VII and its corresponding prayer for relief language as well.

Under Connecticut law, "'Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment.'" *Joyce Van Lines, Inc. v. Lodmell*, No. 3:19-CV-0202 (JCH), 2019 WL 13215402, at *2 (D. Conn. Dec. 19, 2019) (quoting *Vertex, Inc. v. City of Waterbury*, 278 Conn. 557, 573 (2006)).  "To state a claim for quantum meruit, '[t]he pleadings must allege facts to support the theory that the defendant, by knowingly accepting the services of the plaintiff and representing to her that she would be compensated in the future, impliedly promised to pay her for the services she rendered.'" *Id.* (quoting *Total Aircraft, LLC v. Nascimento*, 93 Conn. App. 576, 582 n.5 (2006)).

Claims of quantum meruit and unjust enrichment are both equitable remedies, and thus under state law, "[t]he lack of a remedy under a contract is a precondition to recovery" under both causes of action.  *United Coastal Indus., Inc. v. Clearheart Constr. Co., Inc.,* 71 Conn. App. 506, 513 (2002); *see also Alliance Grp. Servs., Inc. v. Grassi & Co.*, 406 F. Supp. 2d 157, 166 (D. Conn. 2005) (the "lack of a remedy under the contract is a precondition for recovery" under unjust enrichment).  "Because lack of an express contract is a precondition to recovery based on unjust enrichment, allegations to the contrary incorporated into the count require dismissal." *North American Tech. Servs., Inc. v. V.J. Techs., Inc.*, No. 10-CV-1384 (AWT), 2011 WL 4538069, at *5–6 (D. Conn. Sept. 29, 2011) (citing *J & N Elec., Inc. v. Notkins*, No. 085020144, 2009 WL 1607591, at *2 (Conn. Super. Ct. May 20, 2009)); *see also Joyce Van Lines, Inc.*, 2019 WL 13215402, at *3 ("[o]ther courts addressing similar issues have held that a plaintiff cannot

incorporate allegations of breach of an express contract into its unjust enrichment or quantum meruit claims because lack of an express contract is a precondition to recovery under both claims."); *Learning Care Grp., Inc. v. Armetta*, No. 3:13-CV-01540 (VLB), 2014 WL 12651264, at *20 (D. Conn. Sept. 30, 2014) ("a proper pleading of unjust enrichment or quantum meruit must include the allegation that no remedy is available to the claimant by action on a contract, and alternative pleadings must be set forth in separate counts that do not incorporate inconsistent claims.").

Here, while Plaintiff does this time assert that its unjust enrichment claim is "[i]n the alternative," and is alleged to the extent "the court finds that no enforceable contract existed for the work performed on Season 2," that cannot overcome the fact that Plaintiff again "repeats and realleges" all allegations in the preceding paragraphs, including Plaintiff's allegations that express and enforceable contracts existed for work on Seasons 1 and 2.  ECF No. 1 ¶¶ 129–130; *see also id.* ¶¶ 92, 96.  Connecticut state law is clear:  a claim for quantum meruit/unjust enrichment cannot *incorporate* allegations—much less an entire count—based on a valid and enforceable contract, even if the count facially alleges it is pleaded in the alternative.  *See North American Tech. Servs., Inc.*, 2011 WL 4538069, at *5–6.  Thus, Defendants' motion to dismiss is granted as to Plaintiff's quantum meruit/unjust enrichment count and the corresponding language in Plaintiff's prayer for relief, with leave to amend.

## IV. CONCLUSION

For the reasons described herein, Defendants' partial motion to dismiss Counts VI and VII of Plaintiff's complaint is GRANTED, with leave to amend these counts. Plaintiff's request for declaratory judgment in connection with Count VII is stricken.

Plaintiff may file an amended complaint by **October 20, 2025**, to attempt to rectify the deficiencies identified in this order as to Counts VI and VII.

**SO ORDERED** at Hartford, Connecticut, this 29th day of September, 2025.

                                               */s/ Sarala V. Nagala*
                                               SARALA V. NAGALA
                                               UNITED STATES DISTRICT JUDGE